# Pittsburg *versus* Cluley.

1. An ordinance authorized the grading, &c., of Centre avenue *from* Dinwiddie street to Kirkpatrick street, which was east of the east line of Dinwiddie street. At the passage of the ordinance Centre avenue had been graded, &c., from the west to about the middle of Dinwiddie. *Held*, that the ordinance authorized the grading of the ungraded part of Dinwiddie.

2. "From a street" does not necessarily mean from its nearest line, but may mean from any part of the street, according to existing circumstances.

October 13th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the District Court of *Allegheny county*: No. 144, to October and November Term 1873.

This proceeding was a scire facias, issued April 15th 1869, by

The City of Pittsburg against John F. Cluley, on à municipal claim ($440.20) for grading and curbing opposite sixty feet of defendant's lot on Centre avenue.

On the 10th of March 1868 the councils of Pittsburg passed an ordinance :—

" That the city engineer be and he is hereby authorized and directed to advertise for proposals for the grading, paving and curbing of Centre avenue, from Dinwiddie street to Kirkpatrick street; and to let the same in the manner directed," &c.

In accordance with this ordinance, a contract was made and Centre avenue was graded from about the centre of Dinwiddie street eastwardly to Kirkpatrick street.   In this grading, &c., there were about thirty-two feet of the defendant's lot west of the east line of Dinwiddie street and about twenty-eight feet east of that line, which were graded and paved.   Centre avenue had previously been graded and paved from beyond the west line of Dinwiddie street to its centre, and in this way the thirty-two feet above mentioned, being in front of defendant's lot and opposite Dinwiddie street, were left ungraded and unpaved previously to this contract.

The contention of the defendant was that, as Kirkpatrick street was east of Dinwiddie street, under the ordinance, the grading, &c., should commence from the east side of that street, and therefore would not cover any portion of the grading west of the east line, although within the lines of Dinwiddie street.

The court was requested by the plaintiff to instruct the jury :—

" That the ordinance in evidence authorized the city officers to grade and pave the street to a line drawn from the extreme line of Dinwiddie street at right angles to Centre avenue."

The court answered: " We decline to charge as requested in this point.   We are of opinion, and so instruct the jury, that the plaintiffs are entitled to recover for grading and paving Centre avenue twenty-eight feet in front of the defendant's property, which distance is ascertained by running a line from the line opposite the mouth of Dinwiddie street at right angles with the inner line of Dinwiddie street."

The jury found for the plaintiffs $258.29, the amount for grading, &c., the twenty-eight feet, and excluding the thirty-two feet within the lines of Dinwiddie street.

The plaintiffs removed the record to the Supreme Court, and assigned for error the answer of the court to the point.

*D. F. Watson* (with whom was *J. F. Slagle*), for plaintiff in error.

*D. Read,* for defendant in error.

[Pittsburg v. Cluley.]

The opinion of the court was delivered, March 2d 1874, by

WILLIAMS, J.—The ordinance of the 10th of March 1868, under which the work was done for which the assessment in controversy was made, authorized the grading, paving and curbing of Centre avenue from Dinwiddie street to Kirkpatrick street. Under the direction of the city engineer, who was authorized to advertise for proposals and let the work, the contractors graded, paved and curbed Centre avenue from or near the point where its south line is intersected by the west line of Dinwiddie street to Kirkpatrick street. If, instead of commencing the work at this point, they had commenced it at the point where it is intersected by the east line of Dinwiddie street, it would have left a gap in the avenue of about thirty-two feet in length, in front of the defendant's property, ungraded and unpaved. Did the ordinance, then, under which the work was done, authorize the grading, paving and curbing of that portion of the avenue lying between the points where its south line is intersected by the east and west lines of Dinwiddie street? If it did, the defendant's property is liable for the assessment made to defray the cost and expense thereof; but if it did not, there was no authority to do the work and make the assessment. The ordinance must have a reasonable construction; and in order to ascertain its meaning and the intention of its framers, as deduced from its language, the court may look at the circumstances under which it was passed: Cox v. Freedley, 9 Casey 124. The evidence shows that, prior to its passage, Centre avenue had been graded, paved and curbed from Fulton street to a point a few feet beyond the west line of Dinwiddie street—a fact which must have been well known to the councils by whom the ordinance was passed. If they intended that the work should commence at the east line of Dinwiddie street, they must have intended to leave that portion of the avenue in front of the defendant's property, opposite the mouth of Dinwiddie street, without being graded, paved and curbed. Can it be that they intended to leave such 'a gap between the old and new work? We cannot impute to them an intention so unreasonable and absurd, if the language of the ordinance will admit of a different construction. Manifestly it is broad enough to include that portion of the avenue opposite the mouth of Dinwiddie street, on which the work in controversy was done. *From a street* may mean from any part of the street, and does not necessarily mean from its inner or nearest line. The Erie and North-East Railroad Company was authorized by its charter to build a railroad "from the borough of Erie to some point on the east boundary of the township of North-East." It was conceded by the court that the word *from* should be taken inclusively, and that a road from any part of the borough to the proposed *terminus ad quem*, was a compliance with the law: Commonwealth v. Erie and North-East Railroad Co., 3 Casey 339.

The word *from*, as used in the ordinance here, may well have as broad a meaning. If the city engineer had given to the ordinance the construction for which the defendant contends, it would, as already suggested, have left about thirty-two feet of the avenue in front of his property ungraded and unpaved; and in that case he might have objected with good reason to an assessment for the grading and paving of the avenue in front of the remaining twenty-eight feet of his property, on the ground that the work had not been done in conformity with the true intent and meaning of the ordinance; and that the grading and paving of only a portion of the avenue in front of his property, leaving a gap of thirty-two feet ungraded and unpaved, instead of being a benefit, was a nuisance. But there is no need of further argument. It is manifest that the councils intended that the new work should be so connected with the old as to make the grading and paving of the avenue uniform and continuous. It follows that the court below erred in declining to charge as requested by the plaintiff.

Judgment reversed, and a *venire facias de novo* awarded.